IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling


JOHN LEONETTI,

      Plaintiff,

v.

                                               **CIV. ACT. NO. 5:22-CV-35**
                                               Judge Bailey

**SWN PRODUCTION COMPANY,**
and **EQUINOR USA ONSHORE**
**PROPERTIES INC.,**

      Defendants.


## ORDER

Pending before this Court is Defendants' Motion for Partial Dismissal [Doc. 129] and Memorandum in Support [Doc. 130], filed May 27, 2026, in which defendants seek dismissal of plaintiff's claims for fraud, conversion, and declaratory judgment as asserted within the Amended Complaint. On June 9, 2026, plaintiff filed his Response. [Doc. 138]. On June 16, 2026, defendants filed their Reply. [Doc. 145]. The Motion is now ripe for adjudication. For the reasons that follow, the Motion will be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of a dispute over royalty payments made pursuant to a certain oil and gas lease held by plaintiff (hereinafter, the "Subject Lease"). Defendants are the successors-in-interest to the original lessee. Plaintiff's Amended Complaint, filed under seal, generally alleges that defendants have breached said lease "through the retention

and deduction of post-production costs from the royalty share and in their failure to properly and accurately account for the total volumes and sales records for all of the 'oil, gas and constituents thereof' produced from the Leonetti property, as well as its failure to pay the appropriate market values under the lease." [Doc. 199 at ¶ 35].

This Court recently granted plaintiff leave to amend his Complaint in order to assert his claim for fraud with more particularity and to conform his pleading to the evidence produced in discovery. *See* [Doc. 118]. Specifically, the Amended Complaint includes new allegations concerning affiliate sales agreements that defendants allegedly utilized to disguise and conceal post-production costs which plaintiff contends were wrongfully taken from his royalty share. *See e.g.,* [Doc. 199 at ¶¶ 22–24 (SEALED)].  In other words, plaintiff asserts that the monies received by defendants from the sale of the oil, gas, and constituents to defendants' affiliates would account for certain midstream expenses incurred by these affiliates in bringing the oil and gas to market, but these deducted costs would ultimately not show up on plaintiff's royalty statements. [Id. at ¶ 23]. In plaintiff's words:

> 23. Previously unknown and undisclosed to the Plaintiff, discovery in this case has revealed that Defendants ... have entered into affiliate sales agreements which expressly provide for their affiliates to buy oil, natural gas and constitutents, including NGLs[1] from the Defendants **at a price that provides for the express or implicit deductions of post production costs, including, but not limited to, such costs or volumes charged by**

---

[1]"NGLs" stands for "Natural Gas Liquids."

2

**the affiliates and/or third-party midstream "partners"** ... in processing and transporting the oil, gas or its constituents and in separating the NGLs from the wet gas. **The affiliate sales agreements and related documents either expressly allow for these deductions of post-production costs or include such costs under the name of marketing costs, marketing fees, or administrative fees.**

***

24. Consistent with such affiliate sales agreements, discovery has revealed that the oil, gas, and NGLs produced and allocated to the Leonetti Wells incur allocated post-production costs in the form of volumetric reductions and fees. Certain fees are standalone charges and other fees are embedded as reductions to or netted against the gross price for oil, gas, or NGLs. Other than small NEGFLU addbacks, the field fuel use, plant fuel use, gas transportation fuel, gas pipeline transportation capacity demand fees, gas pipeline commodity fees and NGL fractionation and rail transportation fees are not disclosed on the Plaintiffs monthly revenue statements.

[Id. at ¶¶ 23–24 (emphasis added)].

Essentially, therefore, the Amended Complaint alleges that defendants have wrongfully deducted post-production costs from plaintiff's earnings and wrongfully calculated his royalty share by utilizing third-party sales that are not true arms-length transactions; accordingly, the proportionate share of proceeds received by plaintiff are not reflective of the actual market price of the oil and gas products. [Id.]. While the Amended

3

Complaint does not specifically delineate the causes of action it asserts, plaintiff appears to assert claims for (1) breach of contract; (2) fraud/fraudulent concealment; (3) conversion; (4) declaratory judgment; and (5) punitive damages. *See* [id. at ¶¶ 34, 38, 40–41, 45, 49, 52].

Defendants now bring the instant Motion seeking to dismiss plaintiff's claims for fraud, conversion, declaratory judgment, and punitive damages for failure to state a claim upon which relief can be granted. [Doc. 129 at 1]; *see also* Fed. R. Civ. P. 12(b)(6). More specifically, defendants first contend that plaintiff's claims for fraud and conversion are barred under West Virginia's "gist of the action" doctrine, which generally precludes parties from asserting tort claims which are duplicative of a breach of contract claim. [Doc. 130 at 1–2]. Next, defendants assert that plaintiff's declaratory judgment claim is an "improper tack-on claim" and should be dismissed as this claim is based upon the same conduct which underlies plaintiff's breach of contract claim. [Id. at 2]. Third and finally, defendants argue that, because plaintiff's tort claims are barred by the gist of the action doctrine, then, by extension, plaintiff is barred from asserting a claim for punitive damages because this type of damages is generally not recoverable in an action for breach of contract. [Id.].

## STANDARD OF REVIEW

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of plausibility). When reviewing a

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995) (*cert. granted, Anheuser-Busch, Inc. v. Schmoke*, 517 U.S. 1206 (1996)). In *Twombly*, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 Fed.App'x. 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 Fed.App'x. 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396–97.

## DISCUSSION

I. **Plaintiff's tort claims are not barred by the gist of the action doctrine because plaintiff alleges independent conduct that is violative of defendants' broader social duty to plaintiff.**

The West Virginia Supreme Court of Appeals ("WVSCA") has articulated the gist of the action doctrine as follows:

> In seeking to prevent the recasting of a contract claim as a tort claim, courts often apply the "gist of the action" doctrine. Under this doctrine, recovery in tort will be barred when any of the following factors is demonstrated: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 586, 746 S.E.2d 568, 577 (2013) (internal block quotation and citations omitted). Accordingly,"[a]n action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract." Syl. Pt. 9, in part, *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W.Va. 609, 611, 567 S.E.2d 619, 621 (2002). In other words, to assert a tort claim in conjunction with a breach of contract claim, the plaintiff must establish that the defendant owed the plaintiff a duty arising independently of their contractual relationship. *See id.* "Succinctly stated, whether a tort claim can coexist with

6

a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." *Gaddy*, 231 W.Va. 577, 746 S.E.2d at 577.

In support of their argument for dismissal, defendants cite multiple prior decisions from this Court which have struck fraud or conversion claims in royalty dispute cases because the alleged fraud (*i.e.,* concealment and underpayment of royalties) arises from the contractual relationship, not an independent duty. *See* [Doc. 130 at 8 (citing *Southern Country Farms, Inc. v. TH Exploration, LLC*, 2021 WL 5147989 (N.D. W.Va. Nov. 4, 2021) (Bailey, J.); *Mills Wetzel Lands, Inc. v. EQT Prod. Co.*, 2019 WL 286748, at *4–5 (N.D. W.Va. Jan. 22, 2019) (Stamp, Jr., J.); *Corder v. Antero Res. Corp.* ("*Corder I*"), 322 F.Supp.3d 710, 723 (N.D. W. Va. 2018) (Keeley, J.); *Young v. SWN Production Company, et al.*, No. 5:17-CV-82, (N.D. W.Va. Feb. 12, 2025) (Bailey, J.))]. As defendants argue, "[b]ecause a finding of breach of contract is necessary to a finding of fraud, Plaintiff's fraud claims are clearly dependent on Plaintiff's breach of contract claims and barred by the gist of the action doctrine." [Doc. 130 at 10]. In further support of their arguments, defendants attach this Court's prior decision in *Young*, wherein the undersigned dismissed the plaintiff's tort claims as barred under the gist of the action doctrine. *See* [Doc. 130-1, Ex. 1].

In Response, plaintiff contends that the doctrine is not a bar to his tort claims because his "fraud claims are not based merely upon the Defendants' breach of the contractual obligations under the lease and addendum, but rather Defendants' actions omissions, and statements breach social duties and form the elements of separate torts insofar as the Defendants sought through fraudulent representations and concealments

to hide that they were taking any deductions for post-production costs from Plaintiff's royalty[.]" [Doc. 138 at 8–9]. In other words, plaintiff asserts that the defendants breached independent duties owed to him by making misrepresentations to plaintiff in his monthly royalty statements that no deductions were being taken, and by taking steps to conceal this fact from plaintiff. *See* [id.]. As additional support for his argument, plaintiff points out that "the vast majority of fraud claims, if not all, arise from and surround business transactions in which the parties enter into written or verbal contractual agreements and involve a party's tortious activity surrounding its performance or failure to perform its contractual duties." [Id. at 9] In plaintiff's view, therefore, defendant's view of the gist of the action doctrine is overbroad and would bar the assertion of many, if not all, claims for fraud and/or fraudulent concealment. [Id.]. To sum up plaintiff's argument: "Simply stated, the Defendants have not merely breached the lease by mistakenly misinterpreting it and taking deductions for post-production costs that are not permitted under the lease pursuant to the law of West Virginia ... Rather, Defendants through fraudulent misrepresentations and concealment have attempted to hide that they are and have been taking any deductions for post-production costs from the Plaintiff's royalties." [Id. (citation omitted)].

Here, it bears noting that this is not this Court's "first rodeo" on the issue presented on this case:

[T]his Court has previously found that a fraud claim related to misrepresentations about the royalties owed under the oil and gas lease are barred by the gist of the action doctrine. See *Corder v. Antero Resources Corporation*, 322 F.Supp.3d 710, 723 (N.D. W.Va. 2018) (Keeley, J.)

8

[("*Corder I*")]. In *Corder*, the complaint alleged claims for, among others, breach of contract related to an oil and gas leases and fraud. The fraud allegations concerned alleged misrepresentations about defendants right to take deductions from plaintiffs' royalty, reducing plaintiffs' royalty payments, misrepresenting the volume taken from plaintiffs' property, overcharging for services, claiming plaintiffs' royalty due was less than the amount actually due, and failing to report to plaintiffs that they were extracting and selling liquids from plaintiffs' natural gas. *Id*. at 721. The Court found that the alleged fraud arose solely from the contractual relationship created by the oil and gas leases and was thus barred by the gist of the action doctrine. *Id*. at 723.

The Court finds that the same analysis applies here. Plaintiff has asserted a claim for misrepresentation, alleging that defendants misrepresented (1) "that the sale prices reflected in its royalty statements were the true market value of the oil, gas, and associated products;" (2) the volume of oil and gas produced under the lease; (3) the costs charged before calculating royalties; (4) the monetary reductions in royalty proceeds; (5) that the sale of the products was to a true third-party in an arms-length transaction; and (6) other unspecified misrepresentations. [Doc. 1 at 20]. As in *Corder*, the alleged fraud arises solely from the contractual relationship created by the lease and, as such, this claim should be dismissed.

9

Insofar as Count III of the Complaint asserts a claim for conversion, it is likewise barred by the gist of the action doctrine. Plaintiff alleges that defendants are liable under a theory of conversion because they have taken oil and gas and related products from plaintiff for their own purposes and without consent or payment. [Doc. 1 at 21]. This claim is entirely dependent on the success of the breach of contract claim because it is based on defendants failure to pay the proper amounts under the lease. This Court has previously found that the gist of the action doctrine applies to a conversion claim when the alleged conversion is based on failure to pay the proper amount under the oil and gas lease. ***Rodgers v. Southwestern Energy Company***, No. 5:16-CV-54, 2016 WL 3248437, at *3 (N.D. W.Va. June 13, 2016) (Bailey, J.). Accordingly, the conversion claim should be dismissed.

***S. Country Farms, Inc. v. Th Expl., LLC***, 2021 WL 5147989, at *2–3 (N.D. W.Va. Nov. 4, 2021) (Bailey, J.).

In contrast to the holdings outlined above, plaintiff cites (3) cases in which the undersigned found that tort claims were *not* barred by the gist of the action doctrine in an oil and gas case: (1) ***Hopper v. Jay-Bee Oil & Gas, Inc.***, 2022 WL 19403557 (N.D. W.Va. Dec. 5, 2022) (Bailey, J.); (2) ***Kay Co., LLC v. EQT Prod. Co.***, 2018 WL 11411389 (N.D. W.Va. Nov. 1, 2018) (Bailey, J.); and (3) ***Yoho v. Sw. Energy Co.***, 688 F.Supp.3d 345 (N.D. W.Va. 2023) (Bailey, J.).[2]

---

[2]Plaintiff also cites ***Glover v. EQT Corp.***, 2023 WL 5333798 (N.D. W.Va. Aug. 1, 2023) (Bailey, J.), which is discussed *infra*.

After consideration of the multitude of cases cited by both parties, this Court holds that plaintiff's tort claims should be permitted to go forward.  This Court also believes that its decision in **Young** is sufficiently distinguishable by its unique procedural posture and the lease language involved.  In this Court's own independent research, the only on-point appellate decision that it could find is **Corder v. Antero Res. Corp.**, in which the Fourth Circuit, in dicta, observed in a footnote that the district court's dismissal of the plaintiff's fraud claim based on the gist of the action doctrine was "well supported."  **Corder v. Antero Res. Corp.**, 57 F.4th 384, 404 (4th Cir. 2023) ("**Corder II**").

However, this Court has previously discussed its view of **Corder II** and some of the other cases at the district court level in this District:

> As noted by EQT, this Court has previously held that the gist of the action doctrine does, in fact, bar fraud claims alleging various misrepresentations or omissions regarding royalties owed under oil and gas leases. **Southern Country Farms, Inc. v. TH Expl., LLC**, 2021 WL 5147989, at *2–3 (N.D. W.Va. 2021) (Bailey, J.).

> EQT also relies on **Corder I** and the Fourth Circuit's confirmation that the **Corder I** ruling was "well-supported." **Corder v. Antero Res. Corp.**, 57 F.4th 384, 404 fn.12 (4th Cir. 2023 (hereinafter "**Corder II**"). EQT somewhat inflates the importance that the "gist of the action" doctrine had in **Corder II**. The only time "gist of the action" doctrine is discussed in **Corder II** is in Footnote 12.

> Footnote 12 states:

11

The district court also held that Lessors' fraud claim was barred by West Virginia's "gist of the action" doctrine, which requires that alleged fraud be independent of a contractual relationship. *See Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 746 S.E.2d 568, 577 (2013) (explaining that the "gist of the action" doctrine bars tort actions where "the alleged duties breached were grounded in the contract itself"). **Because Lessors failed to plead fraud with particularity, we do not need to resolve that question. At any rate, the district court's analysis seems well-supported.** In the Second Amended Complaint, Lessors identified only one specific duty that was not grounded in the contract: the "duty to account for" the volume and sales of gas extracted from Lessors' properties. J.A. 757. Lessors do not cite any authority, either from West Virginia or other jurisdictions, that clearly identifies a non-contractual duty to account. *See Swearingen v. Steers*, 49 W.Va. 312, 38 S.E. 510, 511 (1901) (describing a "duty to keep and render a strict account of the output [of mining operations]," but in a case where the litigants were parties to a contractual agreement).

This footnote makes clear that the analysis Judge Keeley utilized is "well-supported." **However, the Fourth Circuit did not resolve the "gist of the action" doctrine question in *Corder II*.**

**Based upon the evidence established in this case and the same legal reasoning discussed in *Corder I*, plaintiffs' claims of fraudulent conduct constitute independent torts which are fully actionable under the laws of West Virginia, in addition to plaintiffs' claims for breach of contract.**

*Glover*, 2023 WL 5333798, at \*4–5 (emphasis added).  Accordingly, permitting plaintiff's tort claims to proceed in this case is in line with this Court's rationale expressed in *Glover*.

With regard to this Court's holding in *Young*, a critical distinction is that the sufficiency of the royalty language in *Young* was appealed to the Fourth Circuit, who then held that it satisfied *Wellman* and *Tawney* and therefore permitted the deduction of post-production costs. *Young v. Equinor USA Onshore Props., Inc.*, 982 F.3d 201, 203 (4th Cir. 2020).  Accordingly, the remaining issue following that appeal was simply whether the deductions taken by the defendants were actually incurred and reasonable. *See* [5:17-CV-82, Doc. 194 at 4].

Accordingly, when this Court issued its subsequent Order holding that the Youngs' tort claims were barred by the gist of the action doctrine, this Court was necessarily bound by the Fourth Circuit's holding that the Young Lease was legally sufficient to permit deductions. *See Young*, 982 F.3d 201, 209 (4th Cir. 2020) ("In sum, we are satisfied that the lease suffices under *Tawney* to indicate the method for calculating the amount of post-production costs to be deducted when calculating the Youngs' royalties.").  It would therefore make little sense to allow plaintiffs' tort claims to go forward where the lessor was

expressly permitted by the lease to take deductions—the only relevant questions were which ones and how much.

In their Reply, defendants attempt to analogize the instant case to *Young* with particular emphasis on the fact that *Young* "involved the same defendants, the same affiliate sales contracts, and the same fraud allegations penned by the same plaintiff's counsel" as in this case. [Doc. 145 at 7 (emphasis removed)].

This Court finds this line of reasoning unpersuasive. In highlighting the similarities between this case and *Young*, defendants overlook a critical difference between that case and this one: *the lease itself*. Importantly, the *Young* lease specifically contemplated sales to affiliates. [5:17-CV-82, Doc. 206 at 11]; *see also* [Doc. 145-1, Ex.1, at ¶ 8 (reproducing *Young* lease language, including definition of "post production costs")]. Accordingly, the same theory of liability for fraud alleged in this case would not apply in *Young*, as the *Young* plaintiffs were, by virtue of their lease, aware that their oil and gas may be sold to affiliated parties.

This Court also finds compelling the plaintiff's argument that "the vast majority of fraud claims, if not all, arise from and surround business transactions in which the parties enter into written or verbal contractual agreements and involve a party's tortious activity surrounding its performance or failure to perform its contractual duties." [Doc. 138 at 9]. Nor is this a novel concept in relevant jurisprudence. *See Bruno v. Erie Ins. Co.*, 630 Pa. 79, 103, 106 A.3d 48, 63, 68 (2014) ("merely because a cause of action between two parties to a contract is based on the actions of the defendant undertaken while performing his contractual duties, this fact, alone, does not automatically characterize the action as

one for breach of contract ... If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort ...."); *see also* **Good v. Am. Water Works Co., Inc.**, 2016 WL 5441035, at *8 (S.D. W.Va. Sept. 27, 2016) (Copenhaver, Jr., J.) ("In sum, when duties and standards of care not ordinarily required by tort law are created by contract, the action must be on contract. When 'a broader social duty' owed to all individuals is involved, however, the highest courts in Pennsylvania and West Virginia agree that a cause of action in tort may be preserved.").

Business partners, and certainly parties to an oil and gas lease agreement, have a broader social duty to be not just accurate, but also *honest* in their business dealings. While accuracy and honesty are similar concepts, they are not the same.  A business party can be inaccurate in its dealings while still being honest.  It is the alleged violation of *this* duty that controls in the circumstances of this case.  *See* [Doc. 138 at 18 ("Clearly, the broader social concerns involved in the torts seeking to protect people from fraudulent misrepresentations and concealments are involved in the actions of the Defendants at issue in this case." (citing out of jurisdiction cases))].

Make no mistake; this Court is not attempting to make new law today.  The gist of the action doctrine still has a place in prospective contract/tort actions—including oil and gas royalty cases.  In that vein, this Order should not be read to imply this Court will give a threadbare assertion of fraud (or other torts for that matter) a free pass to the discovery stage simply because the complaint asserts a breach of contract claim along with it.  As

the case law cited above makes clear, the tortious conduct must be truly independent of the contractual relationship in order to survive dismissal.

The above said, however, overly-strict application of the gist of the action doctrine would foster an environment where ill-intentioned parties could avoid the enhanced liability exposure of tort actions merely by virtue of the existence of a contract between them and the prospective plaintiff. Where, as here, the plaintiff alleges that the defendants *fraudulently concealed* the deduction of post-production costs by submitting ostensibly accurate royalty statements and baked deductions into the royalty calculation via third-party affiliate sales, this Court finds that dismissing plaintiff's claims simply because the parties' relationship originated in contract would be inappropriate. *See* [Doc. 119 at ¶¶ 22–23 (SEALED)]. Yes, the defendants' obligation to pay plaintiff accurate royalties does arise by virtue of the Subject Lease, but the conduct alleged by plaintiff alleges implicates duties that would not arise due to, for example, a mere accounting error.

Ultimately, this Court finds that allowing the gist of the action doctrine to bar plaintiff's claims under these circumstances would essentially allow shady business characters to defraud the parties with which they contract with impunity. Moreover, even when these parties are called out for their malfeasance, the only consequence would be, at most, a court ordering them to return the funds they had no right to in the first place. This leaves the plaintiff with no other remedy to make him truly whole, nor would it incentivize non-parties to do business honestly. As this Court has previously articulated, heavy-handed application of the gist of the action doctrine would essentially give

16

contracting parties a "license to steal." *See Kay*, 2018 WL 11411389, at *6 (quoting *Grynberg v. Citation Oil and Gas Corp.*, 573 N.W.2d 493, 500–503 (S.Dak. 1997)).

At bottom, the mere fact that the parties in this case have a contract with each other should not, as a blanket rule, preclude liability for fraud or conversion where defendants are alleged to be cheating plaintiff out of royalty payments to which he is entitled and taking convoluted steps to hide that fact. To limit plaintiff solely to contractual damages would run the risk of leaving him without a remedy capable of making him truly whole.[3]

Accordingly, defendants' Motion is **DENIED** to the extent that it seeks to dismiss plaintiff's claims for fraud and conversion based on the gist of the action doctrine.

## II. Plaintiff's declaratory judgment claim fails to state a claim because it is duplicative of his breach of contract claim.

In *Young*, this Court previously addressed the issue of a duplicative declaratory judgment claim:

"The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy, not a substantive cause of action. Its operation 'is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" *Goodno v. Antero Res. Corp.*, 2020 WL 13094067, at *3 (N.D. W.Va. 2020) (Bailey, J.) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). "Its purpose is to allow 'prospective defendants to sue to establish their nonliability,' not create a

---

[3]This Order should be read to opine as to the legal sufficiency of plaintiff's allegations only. The issue of the sufficiency of the Subject Lease's language to permit deductions is reserved for another day, and this Court expresses no opinion as to the actual merit or likelihood of success of plaintiff's claims.

substantive tack-on claim for an already-existing plaintiff who is adjudicating an already-live issue." *Id.* (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959)).

"When declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F.Supp.3d 807, 824 (D. Md. 2015) (Motz, J.) (citation omitted). A claim for declaratory relief is duplicative "where the same conduct underlies claims for declaratory judgment and breach of contract[.]" *Geist v. Hispanic Info. & Telecomms. Network, Inc.*, 2018 WL 1169084, at *7 (D. Md. Mar. 6, 2018) (Xinis, J.).

In *Goodno*, the plaintiffs sought a declaratory judgment from the Court that "Antero is required to pay future royalties to Plaintiffs and the Class members under the Class Leases at issue, based upon prices received by Antero on its sale of natural gas and natural gas liquid products at the point of sale, without deduction of post-production costs." *Goodno*, 5:20-CV-100 [Doc. 1 at ¶ 37]. The Court dismissed the claim as duplicative of plaintiffs' breach of contract claim, reasoning that "[t]he declaratory judgment count ... seeks a declaration that Antero did exactly that with which they are charged in the breach of contract count" and "is not a freestanding claim" because "the issue it raises is already a part of what is squarely presented in this case." *Goodno*, 2020 WL 13094067, at *4. *See also Greenbrier Royalty Fund II, LLC v. Antero Resources Corp.*, 2024 WL

18

4009665, at *5 (N.D. W.Va. Aug. 30, 2024) (Kleeh, C.J.) (dismissing plaintiff's request for declaratory judgment as duplicative); ***Allen v. Antero Resources Corp.***, 2024 WL 778396, at *4–5 (N.D. W.Va. Feb. 26, 2024) (Kleeh, J.) (same).

[5:17-CV-82, Doc. 206 at 14–15].

Plaintiff contends that his declaratory judgment claim is not duplicative because "this is a civil action in which the Defendants are continuing to breach the contract in question and in which the tortious misconduct surrounding such breaches is also still ongoing ...The doctrine sought to be invoked by the Defendants is only properly applicable in cases in which the breach of a contract has occurred in the past and all damages have already accrued; only then is the declaratory judgment claim truly duplicative of the breach of contract claim and a mere improper and unnecessary add-on." [Doc. 138 at 22].

Here, plaintiff's declaratory judgment claim is based upon the same conduct as his breach of contract claim—defendants' alleged underpayment of royalties. Adjudicating the issue of whether or not defendants have breached plaintiff's oil and gas lease will necessarily vindicate the parties' rights under the lease as it relates to their respective royalty obligations.

Plaintiff's argument that declaratory judgment is not duplicative in these circumstances because defendants' alleged breach of the contract is continuing in nature is also without merit.

First, plaintiff cites no authority to support his position that the bar against duplicative declaratory judgment claims *only* applies when "the breach of a contract has occurred in

the past and all damages have already accrued." [Doc. 138 at 22]. Plaintiff cites *Hanback v. DRHI, Inc.*, 94 F.Supp3d 753, 758-59 (E.D. Va. 2015) (Ellis, III, J.), for the proposition that "a declaratory judgment is 'unavailable in situations where ... claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.'" (quoting *Trull v. Smolka*, 2008 WL 4279599, at *8 (E.D. Va. Sept. 18, 2008) (Hudson, J.), *aff'd*, 411 Fed. App'x. 651 (4th Cir. 2011)). It is true that "[d]eclaratory judgment ... is designed to apply prospectively to prevent or mandate reasonably certain, future conduct." *Trull*, 2008 WL 4279599, at *8. However, it does not necessarily follow from that proposition that declaratory judgment is *always* available where damages are continuing in nature, nor does it address the situation here—namely, when plaintiff has asserted another cause of action (i.e., breach of contract) that is capable of supplying the plaintiff with adequate relief.

Second, regardless of the above, a district court's exercise of declaratory judgment is discretionary. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (citations omitted). This Court can see no utility in allowing plaintiff's declaratory judgment claim to proceed in conjunction with the breach of contract claim because adjudicating the breach of contract claim will necessarily require a determination as to the parties' respective rights under the Subject Lease, including whether the lease is sufficient, under West Virginia law, to permit deduction of post-production costs. In other words, interpretation of the Subject Lease is already a "live issue." Therefore, even if plaintiff's request for declaratory judgment were, for some unseen reason, not duplicative, this Court nevertheless believes that it is more prudent to decline exercising its discretion under these circumstances.

20

Accordingly, plaintiff's claim for declaratory judgment is **DISMISSED**.[4]

### III. Because plaintiff's tort claims are not barred, dismissal of plaintiff's claim for punitive damages would be improper.

"Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract." *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 175, 381 S.E.2d 367, 374 (1989). Likewise, "[a]ttorneys' fees are generally not available for breach of contract claims." *Mills Wetzel Lands, Inc. v. EQT Prod. Co.*, 2019 WL 286748, at *7 (N.D. W.Va. Jan. 22, 2019) (Stamp, Jr. J.).

Here, because plaintiff's tort claims are being not being dismissed, dismissal of his punitive damages would be improper. Accordingly, defendant's Motion to Dismiss [**Doc. 129**] is **DENIED** as it relates to plaintiff's request for punitive damages.

### CONCLUSION

Therefore, for the foregoing reasons, defendants' Motion for Partial Dismissal [**Doc. 129**] is **DENIED IN PART** and **GRANTED IN PART**. The Motion is **DENIED IN PART** as it relates to plaintiff's tort claims and requests for punitive damages. The Motion is **GRANTED IN PART** with respect to plaintiff's Declaratory Judgment claim.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

---

[4]Because the Amended Complaint does not specifically delineate plaintiff's various causes of action, this Court will not dismiss any particular paragraph of the Amended Complaint.

**DATED**: June **18**, 2026.


**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**